**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| WASHTENAW COUNTY EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> WALGREEN Co., et al., <br><br> Defendants. | No. 1:15-cv-3187 <br><br> Honorable Sharon Johnson Coleman |

**DEFENDANTS' STATEMENT
IN SUPPORT OF BIFURCATING DISCOVERY**

Pursuant to the Court's January 30, 2017, order (Dkt. 92), Defendants Walgreen Co. ("Walgreens"), Gregory D. Wasson, and Wade D. Miquelon submit this statement in support of bifurcating discovery in this putative securities fraud class action.

## DISCUSSION

The Court's September 30, 2016, motion to dismiss ruling (Dkt. 71) changed the scope and nature of this case. The Complaint alleged that Defendants made more than 30 different false or misleading statements, most of them about Walgreens's FY16 EBIT Goal. (Dkt. 47.) The Court dismissed more than 90 percent of these claims, holding that falsity and scienter were adequately pled for just three statements between March and April 2014. (Dkt. 71 at 8–28.) The Court also stated that the "limited issues remaining" are whether these three statements misled investors by failing to disclose "the existence and nature of generic drug price inflation and reimbursement pressures." (*Id.* at 10–11, 16–17, 26.)

This has significant implications for how this case should proceed. There is no dispute that, when Walgreens released its third quarter FY14 results on June 24, 2014, Defendants discussed the nature and existence of generic drug price inflation and reimbursement pressures, and withdrew the FY16 EBIT Goal because it was no longer reasonably attainable. (*See, e.g.*, *id.* at 6–28.) Nor is there any dispute about the accuracy of these June 2014 statements, as the Court dismissed every claim about them. (*See id.*) The June 2014 disclosures thus informed the market about the very issues that were allegedly misrepresented in March and April 2014. Yet the current lead plaintiff, Industriens Pensionsforsikring A/S, purchased Walgreens stock for the first time on July 7, 2014 – two weeks *after* the June 24, 2014, disclosures regarding generic drug price inflation and reimbursement pressures, and the FY16 EBIT Goal.

Despite this, Industriens seeks to prosecute – on behalf of absent class members who bought *prior* to the June 2014 disclosures – claims regarding "the existence and impact of

generic drug price inflation and the terms of Walgreens's reimbursement contracts on its financial performance and ability to achieve the FY16 EBIT [Goal]." (Dkt. 88 at 2 (Industriens's further statement in the Joint Status and Rule 26(f) Report).) As explained in Defendants' Motion to Reopen the Lead Plaintiff Appointment Process (*see* Dkt. 90 (memo)), there are serious questions about whether all of these claims are certifiable, or whether Industriens is an appropriate lead plaintiff or class representative for any of them – and thus whether it should be making fundamental strategy decisions on behalf of the putative class. The specific facts of this case and the Court's motion to dismiss ruling thus present clear and compelling reasons to bifurcate proceedings and first decide who, if anyone, may represent the class.

Defendants therefore request that the Court resolve class certification before merits discovery begins, and propose the following bifurcated schedule:

- Motion for class certification due 10 days after the Court's decision on bifurcation.

- Response to the motion for class certification due 60 days later (to allow for depositions of Industriens and its expert(s)).

- Reply in support of the motion for class certification due 30 days later (to allow for deposition(s) of Defendants' expert(s)).

- Proposed schedule for merits discovery, if necessary, due 15 days after the Court's decision on class certification.[1]

---

[1] As discussed below, class certification is likely to significantly affect the scope of merits discovery. Thus, taking into account the class certification decision will allow the parties to craft a tailored merits discovery schedule, though Defendants foresee at this time no need for trial to begin after Industriens's proposed date of December 10, 2018 (*see* Dkt. 88 at 4).

Additionally, Defendants believe that, if this case is bifurcated, their pending Motion to Reopen the Lead Plaintiff Appointment Process could be held in abeyance because the issues raised by it will be substantially and timely addressed by the Court's decision on class certification.

2

### I. BIFURCATION IS A VALUABLE AND COMMONLY USED CASE-MANAGEMENT TOOL FOR COMPLEX CLASS ACTIONS LIKE THIS CASE.

For good reason, class certification is a threshold question to be addressed "[a]t an early practicable time," Fed. R. Civ. P. 23(c)(1)(A). As the Seventh Circuit has observed, "[c]lass-action status must be granted (or denied) early" because "[u]ntil everyone knows who will, and who will not, be bound by the outcome, it is difficult to make informed decisions about how the case should proceed." *Bertrand v. Maram*, 495 F.3d 452, 455 (7th Cir. 2007); *see also Beesley v. Int'l Paper Co.*, 2012 WL 4088729, at *2 (S.D. Ill. Sept. 17, 2012) (explaining that addressing merits issues before class certification would "put[] the cart before the horse").

It is thus no surprise that courts have authority to bifurcate proceedings into class and merits phases in order to "expedite[] an informed certification determination," Fed. R. Civ. P. 23, Advisory Committee Notes, 2003 Amendments; *see also, e.g.*, *Am. Nurses' Ass'n v. State of Ill.*, 1986 WL 10382, at *3 (N.D. Ill. Sept. 12, 1986). Nor is it a surprise that "[c]ourts *often* bifurcate discovery between certification issues and those related to the merits of the allegations." Manual for Complex Litigation (Fourth) § 21.14 (emphasis added). Indeed, courts in this District and around the country regularly recognize the benefits of bifurcation in putative securities fraud class actions like this one. *See, e.g.*, *Van Noppen v. InnerWorkings*, No. 1:14-cv-01416, Dkt. 85 (N.D. Ill. Feb. 25, 2016); *In re Northfield Labs. Inc. Sec. Litig.*, 264 F.R.D. 407, 409 (N.D. Ill. 2009); *Smith v. Dominion Bridge Corp.*, 2007 WL 1101272, at *1 (E.D. Pa. April 11, 2007); *In re Sonus Networks, Inc.*, 229 F.R.D. 339, 341 (D. Mass. 2005); *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 2004 WL 2108410, at *1 (N.D. Ill. Sept. 21, 2004).

### II. BIFURCATION IS PARTICULARLY APPROPRIATE IN THIS CASE.

Courts in this District consider the following three factors when deciding whether to bifurcate class certification and merits discovery in complex class actions:

3

> (1) expediency, meaning whether bifurcated discovery will aid the court in making a timely determination on the class certification motion; (2) economy, meaning the potential impact a grant or denial of certification would have upon the pending litigation and whether the definition of the class would help determine the limits of discovery on the merits; and (3) severability, meaning whether class certification and merits issues are closely enmeshed.

*Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 932 (N.D. Ill. 2013) (internal citation omitted).

All three factors – especially economy – favor bifurcation here.

### A. Expediency Favors Bifurcation.

Bifurcation will aid the Court in making a timely determination on class certification by allowing the parties to focus on, and more quickly present, certification issues. This is particularly so here because of the parties' disputes over the scope of merits discovery. Industriens has served Defendants with wide-ranging requests for documents on dozens of topics, and has served eight third-party subpoenas. Defendants believe that many of Industriens's requests go to claims that were dismissed or that cannot be certified for any class. For example, Industriens seeks discovery through December 31, 2014, well after the June 24, 24014, disclosures regarding the existence and nature of generic drug price inflation and reimbursement pressures, and after the withdrawal of the FY16 EBIT Goal.[2] Without bifurcation, the parties will thus not only be engaging in extensive document discovery at the same time they are pursuing class certification, they will also likely be presenting piecemeal disputes about the proper scope for discovery to the Court – disputes that will raise many of the same issues that class certification will. Bifurcation will allow the parties and the Court to cut to the chase quickly and efficiently, and avoid multiple, overlapping, and likely unnecessary briefing on the same issues.

---

[2] Defendants intend to serve objections to Industriens's pending requests, but otherwise understand that merits discovery is on hold until the Court decides whether to bifurcate.

4

Indeed, the delay that would be caused by simultaneously pursuing class and merits discovery is evident from Industriens's proposed, non-bifurcated schedule. Industriens proposes that its motion for class certification be filed by *May 23*, 2017 – nearly eight months after the Court's motion to dismiss ruling, and after expensive discovery that will likely have no bearing on the remaining issues. In contrast, bifurcation would allow the parties to begin class certification briefing immediately, as set out in the schedule proposed by Defendants above.

### B.     Economy Strongly Favors Bifurcation.

Economy, i.e., efficiency, strongly favors bifurcation for two reasons. *First*, as the Complaint concedes, a denial of class certification would be case dispositive for Industriens, as well as for any claims not certified for class treatment, because it would be "virtually impossible" for putative class members to pursue claims individually (Dkt. 47 ¶ 290). This weighs heavily in favor of bifurcation. *See* Manual for Complex Litigation (Fourth) § 21.14 (bifurcation of class and merits discovery is especially warranted "in cases that are unlikely to continue if not certified, [as] discovery into aspects of the merits unrelated to certification . . . can create extraordinary and unnecessary expense and burden."); *accord* McLaughlin on Class Actions § 3.10 (13th ed.) ("Because many putative class actions will not proceed as individual actions if class certification is denied, interests of cost and resource efficiency often support formally deferring full-blown merits discovery until class certification is decided."); *Harris v. comScore, Inc.*, 2012 WL 686709, at *4 (N.D. Ill. March 2, 2012) (explaining that bifurcation is appropriate where parties admit that the case would not proceed in absence of class certification).

There are particular reasons to believe that Industriens cannot represent any certifiable class in this case, given its purchase of stock after the June 2014 disclosures and the Court's narrowing of the issues. Most notably, Industriens has no financial interest in the remaining claims because it could not have proximately suffered any losses from the three March and April

5

2014 statements at issue: any allegedly misleading impression created by those statements was cured by the June 2014 disclosures, prior to Industriens's stock purchases. (*See* Dkt. 90 at 7–8.) And Industriens cannot satisfy the typicality and adequacy requirements of Rule 23 because it is differently situated from absent class members who bought *prior* to the June 2014 statements regarding the nature and extent of generic drug price inflation and reimbursement pressures, and withdrawing the FY16 EBIT Goal. (*See id.* at 8–10.)

These questions regarding Industriens's ability to represent absent class members raise special, and pressing, concerns under the Private Securities Litigation Reform Act (the "PSLRA"). The PSLRA expressly "raise[s] the standard adequacy threshold" under Rule 23 because, "in complex class action securities cases governed by the PSLRA, the [Rule 23] adequacy standard must reflect the governing principles of the [PSLRA] and, particularly, Congress's emphatic command that competent plaintiffs, rather than lawyers, direct such cases." *Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 484 (5th Cir. 2001). This is why courts across the country have recognized "a continuing duty [under the PSLRA] to monitor whether lead plaintiffs are capable of adequately protecting the interests of the class members." *In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112, 114 (S.D.N.Y. 2009). Bifurcation will allow the Court to timely ensure, pursuant to the PSLRA, that this case is prosecuted by a plaintiff that can monitor counsel and make strategic decisions about the case in the interests of absent class members.

*Second*, if a class is certified, the decision will inform, and likely narrow, the parameters of merits discovery, both by setting the length of the class period, and by determining the common issues certified for class treatment. It is already apparent from the multiple conferences between the parties regarding the Answers, the discovery plan, and the Motion to Reopen the Lead Plaintiff Appointment Process that there are significant disputes regarding the proper scope

6

of merits discovery. As noted above, without bifurcation, the parties will almost certainly be forced to present these disputes piecemeal to the Court. In contrast, addressing class certification first will likely resolve many, if not all, of these disputes in one fell swoop, saving the parties and the Court substantial time and resources. *See Reid*, 964 F. Supp. 2d at 933 ("[I]t is axiomatic that defining the class will make it easier to determine the limits of discovery on the merits."); *see also Harris*, 2012 WL 686709, at *4 (delaying merits discovery until after class certification "may avoid needless discovery into issues that are ultimately not relevant to the litigation").

### C. Severability Favors Bifurcation.

Finally, there are merits issues that can be cleanly severed from class certification. Defendants anticipate that class certification discovery will focus on the related issues of whether Industriens can serve as a class representative, on whether the *Basic* presumption of reliance applies in this case, and on what claims remaining after the Court's motion to dismiss ruling are suitable for class treatment. Discovery regarding the existence and nature of generic drug price inflation and reimbursement pressures in March and April 2014, *i.e.*, on the merits of whether the three statements at issue were in fact misleading, can be delayed until after class certification. This is more than sufficient for severability to support bifurcation. *See Reid*, 964 F. Supp. 2d at 933 (noting that a court need only be able to "discern the general lines" between any merits issues and class certification).

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court bifurcate class certification and merits discovery, with class certification to be resolved before merits discovery begins, in accordance with the schedule Defendants proposed above.

Dated:  February 6, 2017

*/s/ Kristen R. Seeger*

Kristen R. Seeger (No. 6278416)
James W. Ducayet (No. 6236997)
John M. Skakun III (No. 6297636)
Jacqueline M. Pruitt (No. 6306770)
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036
kseeger@sidley.com
jducayet@sidley.com
jskakun@sidley.com
jpruitt@sidley.com

*Attorneys for Defendant Walgreen Co.*

Respectfully Submitted,

*/s/ Thomas B. Quinn*

Thomas B. Quinn (No. 3123575)
Eli J. Litoff (No. 6317940)
RILEY SAFER HOLMES & CANCILA LLP
Three First National Plaza
70 W. Madison, Suite 2900
Chicago, IL 60602
Telephone:  (312) 471-8700
Facsimile:  (312) 471-8701
tquinn@rshc-law.com
elitoff@rshc-law.com

*Attorneys for Defendant Gregory D. Wasson*

*/s/ Caz Hashemi*

Caz Hashemi (No. 6243082)
Kelley M. Kinney (No. 90785755)
Jessica L. Snorgrass (*Pro Hac Vice*)
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, CA 94304
Telephone:  (650) 849-3075
Facsimile:  (650) 493-6811
chashemi@wsgr.com
kkinney@wsgr.com
jsnorgrass@wsgr.com

Laurence H. Levine (No. 1638459)
LAURENCE H. LEVINE LAW OFFICES
190 South LaSalle, Suite 3120
Chicago, IL 60603
Telephone:  (312) 291-7000
Facsimile:  (312) 291-7015
laurence.levine@lhlevine.com

*Attorneys for Defendant Wade D. Miquelon*

**CERTIFICATE OF SERVICE**

Amy C. Andrews certifies that on February 6, 2017, she caused the foregoing document to be electronically filed using the CM/ECF system, which will send notice of this filing to all counsel of record.

*/s/ Amy C. Andrews*

Amy C. Andrews
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603