# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WASHTENAW COUNTY EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> WALGREEN CO., GREGORY D. WASSON, and WADE D. MIQUELON, <br><br> Defendants. | Case No. 15 C 3187 <br><br> District Judge: Sharon Johnson Coleman <br><br> Magistrate Judge: Gabriel A. Fuentes |

## MEMORANDUM OPINION AND ORDER

Lead Plaintiff Industriens Pensionsforsikring, A/S ("Plaintiffs")[1] has renewed its Motion To Compel Defendant Wade D. Miquelon To Produce Documents Provided to the Securities and Exchange Commission (D.E. 260, "Motion to Compel"). The documents consist of three PowerPoint presentations dated April 18, May 2, and June 7, 2018, and one "white paper" dated June 4, 2018 (collectively, "the Miquelon Rule 408 SEC Materials"), submitted to the SEC during discussions leading to a September 2018 settlement of the SEC's investigation into Miquelon and the other two defendants in this case, Walgreen Co. ("Walgreens") and Gregory D. Wasson. Miquelon has submitted the Miquelon Rule 408 SEC Materials for *in camera* review.[2] This matter

---

[1] This Court will refer to movant Industriens Pensionforsikring A/S, which was appointed by the district court to serve as lead class plaintiff, as "Plaintiffs." (*See* D.E. 244 n.1.)

[2] The parties recite a tortured history of supposed Local Rule 37.2 compliance going back to a now stale in-person conference in June 2019 and a long series of discovery correspondence afterwards. Motion to Compel at 5; Response, Exs. 1–2. The Court could determine from this collage of letters and emails that on October 11, 2019, Plaintiffs communicated that they would file their motion to compel and state that Miquelon was refusing to submit the Miquelon Rule 408 SEC Materials for *in camera* review, whereupon counsel for Miquelon sent Plaintiffs an email saying he would make such an *in camera* submission, and then nothing in the record shows whether anything else happened (by way of good-faith efforts to resolve the dispute) before Plaintiffs abruptly filed the Motion to Compel on October 25, three days before Defendants answered the Complaint on October 28. Miquelon submitted the Miquelon Rule 408 SEC Materials for *in camera* review on October 29. The Court has determined that

is before the magistrate judge on the district court's referral for discovery supervision. (D.E. 147.) For the reasons stated below, the Court denies the Motion to Compel.

I. **Background**

The underlying facts and allegations in this matter are set forth in detail in Judge Sharon Johnson Coleman's recent Memorandum Opinion (D.E. 244) granting in part and denying in part the defendants' motion to dismiss under Rule 12(b)(6) and need not be repeated in full here. In short, Plaintiffs have brought a securities fraud class action lawsuit against Walgreens, its former Chief Executive Officer Gregory D. Wasson ("Wasson"), and Miquelon, its former chief financial officer (collectively, "Defendants") under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. Plaintiffs' allegations relate to Walgreens's public statements concerning the expected benefits of a 2012 merger with Alliance Boots GmbH, in the form of a goal, for fiscal year 2016, of between $9 billion and $9.5 billion ("the FY 2016 EBIT Goal") in adjusted earnings before interest and taxes ("EBIT"). *Id.* at 2.

Plaintiffs allege that Walgreens had become aware that earnings would fall short of that goal, in large part due to a significant level of generic drug price inflation and a phenomenon known as "reimbursement pressure," by the class period of March to August 2014 but continued to make statements or omissions that downplayed the risk of not achieving the FY 2016 EBIT Goal. *Id.* "Despite Defendants' actual knowledge of the Company's massive FY16 EBIT shortfall and the company-specific reasons underlying it (*i.e.*, generic drug price inflation combined with unfavorable reimbursement contracts), Defendants concealed these material facts from investors and continued to tout the $9 to $9.5 billion in FY16 EBIT." Redacted First Amended Consolidated

---

notwithstanding the questionable adherence to Local Rule 37.2 and Rule 37(a)(1) of the Federal Rules of Civil Procedure, the submission of the withheld Rule 408 materials *in camera* places this Court in a position to resolve this discovery dispute in a way that promotes a just, speedy, and inexpensive determination of the matter. *See* Fed. R. Civ. P. 1.

2

Class Complaint (D.E. 199, "Complaint") ¶ 9. Defendant Miquelon, whose 2018 submissions to the SEC are sought in the Motion to Compel, was chief financial officer of Walgreens during the class period up to August 4, 2014. Defendant Miquelon's Amended Answer to Consolidated Class Action Complaint (D.E. 87) ¶ 38.

Walgreens asserts that it began negotiating a settlement with the SEC in September 2017. Walgreens's Statement Regarding Plaintiff's Motion to Compel (D.E. 273) at 1; Miquelon has represented that in mid-December 2017, the SEC proposed settlement terms to Miquelon's attorneys.[3] Defendant Wade D. Miquelon's Response to Lead Plaintiff's Motion To Compel Defendant Wade D. Miquelon To Produce Documents Provided to the Securities and Exchange Commission (D.E. 272, "Response") at 1. On September 28, 2018, the SEC concluded its three-year investigation by announcing a settlement that called for Walgreens to pay a $34.5 million penalty and included a cease-and-desist order, along with a penalty of $160,000 for Miquelon and Wasson, without an admission or denial by Walgreens, Miquelon, or Wasson of the SEC's findings that they had misled investors about the FY 2017 EBIT Goal. SEC Press Release 2018-220, "SEC Charges Walgreens and Two Former Executives With Misleading Investors About Forecasted Earnings Goal" (Sept. 28, 2018) (https://www.sec.gov/news/press-release/2018-220); Motion to Compel, Ex. A.

The portion of the SEC investigation leading to that settlement was known as "Phase II." On November 14, 2018, this Court, per then-Magistrate Judge Rowland, ordered defendants to produce certain exhibits and core documents submitted to the SEC during Phase II (Phase I being irrelevant to this matter), except for materials concerning solely international and/or non-pharmacy matters. (D.E. 171.) The November 2018 ruling on that separate, earlier motion to compel did not

---

[3] Plaintiffs stated at oral argument on November 12, 2019, that they lacked sufficient information to dispute these assertions.

concern the Miquelon Rule 408 SEC Materials. Judge Rowland by then already had concluded that "documents addressing the impact of generic inflation and/or reimbursement pressure on the FY 2016 EBIT Goal are relevant for discovery" and that Walgreens would have to produce them, whether they address the impact of those two issues either in 2013-14 or through fiscal year 2016. (D.E. 167.) Those conclusions are unaffected by Judge Coleman's ruling on Walgreens's motion to dismiss the Complaint, as she found nonactionable only Plaintiffs' claim stemming from statements made at the April 30, 2014, Barclay's conference by Rick Hans of Walgreens. (D.E. 244 at 12.) In the end, this Court must consider whether the Miquelon Rule 408 SEC Materials are within the scope of permissible discovery as relevant to a claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).

The Motion to Compel argues that the purported inadmissibility of the Miquelon Rule 408 SEC Materials as settlement communications does not render them non-discoverable in the litigation. Motion to Compel at 3. Plaintiffs' argument for discoverability rests mostly on what they describe as the undisputed relevance of the Miquelon Rule 408 SEC materials to the question of whether Defendants made actionable misrepresentations, and their argument on proportionality is limited to stating that "there is no burden in re-producing the documents here." *Id.* at 3-6. In response, Miquelon argues that FRE 408 and its underlying purposes shield from discovery these four documents, which he says in any event were "sourced from documents produced to the SEC and testimony that has already been or will soon be (as part of Walgreens' productions), produced to Plaintiff[s]." Response at 3-4. Miquelon, like Plaintiffs, presents little or no argument about Rule 26(b)(1)'s proportionality requirement as it might apply to the compelled production of the Miquelon Rule 408 SEC Materials. At oral argument on the motion, on November 12, 2019, counsel for Walgreens stated in open court that disclosure of the Miquelon Rule 408 SEC Materials

would have a chilling effect on future settlement discussions, insofar as Walgreens or other parties would have reason to be concerned that their statements to the regulators would be discovered in the private litigation.

## II. Analysis

The Court's resolution of the Motion to Compel turns on an analysis of whether the requested discovery meets Rule 26(b)(1)'s proportionality requirement. Both parties correctly have cited *Clark v. Experian Information Solutions, Inc.*, No. 03 C 7882, 2006 WL 626820 (N.D. Ill. Mar. 8, 2006), although for different propositions. As Plaintiffs note, the district court in *Clark* reasoned that Rule 408 "does not create any category of documents that is off limits from discovery." *Id.* at *2. In fact, Rule 26(b)(1), as amended in 2015, added the express language that "information within th[e] scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). As Miquelon notes, the *Clark* court acknowledged that "the purpose of Rule 408 to encourage settlement of disputes might be chilled by fear that negotiations might be discoverable, and have sought to balance furthering that purpose with the policy of liberal discovery." *Clark*, 2006 WL 626820 at *3. In considering how to determine whether the requested discovery of Rule 408-protected materials is proportional to the needs of this case, the Court must consider the degree to which such compelled discovery would impose a burden on the important social policy goals underlying Rule 408, and it must make that determination within the framework of the needs of the instant case and with the benefit of an *in camera* review of the substance of the documents.

### A. Applying Rule 26(b)(1) Proportionality to Rule 408-Protected Materials

The Northern District of Indiana was one of the first courts to have considered proportionality under Rule 26(b)(1) in the context of a request to discover FRE 408 materials. *See*

*Arcelormittal Indiana Harbor LLC v. Amex Nooter, LLC*, No. 2:15-CV-195-PRC, 2016 WL 614144 (N.D. Ind. Feb. 16, 2016). The *Arcelormittal* court analyzed *Clark* and other pre-2015 amendment decisions that "adopted a higher standard for discovering the settlement negotiations based on the pre-amendment language of Rule 26(b)(1) that otherwise inadmissible evidence is discoverable if it appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* at *5 (internal quotations omitted) (citing *Pfizer Inc. v. Apotex, Inc.*, 731 F. Supp. 2d 754, 762 (N.D. Ill. 2010); *Steele v. Lincoln Fin. Group*, No. 05 C 7163, 2007 WL 1052495, at *3-4 (N.D. Ill. Apr. 3, 2007); *Clark*, 2006 WL 626820, at *2-3; and *Vardon Golf Co. v. BBMGT Golf. Ltd.*, 156 F.R.D. 641, 651-52 (N.D. Ill. 1994)). The court in *Arcelormittal* discussed how these cases denied or restricted discovery into FRE 408 materials while recognizing the absence of a federal settlement privilege, and how judicial concerns about the policies underlying FRE 408 could rest on Rule 26(b)(1)'s post-amendment language emphasizing the proportionality requirement as an important factor in calculating the scope of discovery. *See Arcelormittal*, 2016 WL 614144, at *5-6 (discussing cases).

The court in *Arcelormittal* first concluded that the FRE 408 materials were relevant to the claims and defenses in the action. *Id.* at *6. Although the court did not have the benefit of briefing on the issue of proportionality of the discovery under Rule 26(b)(1), it reached that question nonetheless, granting the discovery based on (1) the centrality of the discovery to the issues in the case; (2) the court's conclusion that the "burden and expense on Amex Nooter in producing these documents is low"; and (3) the ability of a protective order to address any concerns about the confidentiality of settlement negotiations disclosed by the discovery. *Id.* at *7.

A superficial reading of *Arcelormittal*'s emphasis on Rule 26(b)(1) relevance and proportionality might suggest a shift away from considering the admissibility of FRE 408 materials

in the discoverability calculus. After all, the phrase "reasonably calculated to lead to the discovery of admissible evidence" is disappearing from the lexicon of the scope of discovery and was deleted from the text of the rule in 2015. This Court sees the shift away from Rule 26(b)(1)'s pre-amendment language as more nuanced. The purpose for which the Rule 408 materials are sought, and whether such purpose is related to the materials' inadmissibility under Rule 408, remain important, but not so much under a theory that inadmissibility is an obstacle to their discovery because such discovery cannot "lead to the discovery of admissible evidence."

Rather, when a party seeks Rule 408-protected material for the express purpose of proving or disproving the validity or invalidity of a claim or defense, the policies underlying FRE 408 move to the forefront, and the danger of undermining those policies is at its greatest. In that type of circumstance, a court must ensure under Rule 26(b)(1) that even if the Rule 408-protected materials are relevant, the threat that compelled production might pose to the policy behind Rule 408 does not render the production disproportionate to the needs of the case. And here is where this Court parts ways with *Arcelormittal*, which did not discuss the impact compelled production of Rule 408-protected materials may have on policies encouraging the settlement of cases.

This Court's review of the few cases that have considered the intersection between FRE 408 and Rule 26(b)(1) proportionality confirms that the closer the discovery's purpose is to offering the evidence in a manner that would be barred by Rule 408, the more likely courts are to find the materials non-discoverable. *See Federal Deposit Ins. Co. for Valley Bank v. Crowe Horwath LLP*, No. 17 CV 4384, 2018 WL 3105987, at *12 (N.D. Ill. June 25, 2018) (recognizing that courts impose greater scrutiny on requests for settlement communications where they are sought "for a purpose that is impermissible under Rule 408"); *compare Nutrition Distribution LLC v. Ironmag Labs, Inc.*, No. CV 15-8233-R, 2018 WL 8307882, at *1-2 (C.D. Cal. Oct. 29, 2018)

7

(allowing discovery of settlement communications with third parties despite Rule 408 and in view of Rule 26 proportionality where "[t]here is no indication that Defendants intend to use any of the documents sought in these RFPs for any of the purposes prohibited by FRE 408"); *Kang Haggarty & Fetbroyt, LLC v. Hayes*, No. 17-cv-1295, 2018 WL 4328251, at *1 n.1 (E.D. Pa. July 31, 2018) (allowing, as proportional to the needs of the case, discovery of settlement agreement disclosing contingency fees owed to them by defendants from defendants' settlement recovery in another case, in order to determine what contingency fee was owed to plaintiffs in the instant case, but applying a "'heightened' or 'particularized' showing of relevance" because of the "strong public policy encouraging settlements" under Rule 408); *Gramercy Group, Inc. v. D.A. Builders, LLC*, No. 16-00114 JMS-KSC (D. Haw. Nov. 9, 2017) (allowing, as proportional, deposition of party's litigation counsel about prior settlement negotiations where party had submitted declarations about those negotiations in support of an earlier summary judgment motion and had exhibited "a pattern of hiding behind FRE 408 throughout the discovery process"); and *Evanston Ins. Co. v. Aminokit Labs., Inc.*, No. 15-cv-026665-RM-NYW, 2016 WL 9738102, at *7-8 (D. Colo. Oct. 21, 2016) (allowing, as proportional, discovery of settlement-related communications in the absence of a "settlement privilege" and without discussing the policies underlying Rule 408 and adding that the parties arguments on this issue were not persuasive), *with Agrofresh Inc. v. Essentiv LLC*, No. 16-663-MN-SRF, 2018 WL 9578196, at *3 (D. Del. Dec. 11, 2018) (denying discovery of settlement-related documents under Rule 26(b)(1) after weighing the liberal relevance standard against the policy of promoting settlement" under Rule 408, based on conclusion that party seeking the Rule 408 documents did so to prove the validity of a disputed claim and thus could make no "particularized showing that the [settlement] agreement is relevant to a permitted purpose under Rule 408"); and *Castro v. Poulton*, No. 2:15-CV-1908 JCM (GWF), 2017 WL 3726351, at *9-10

(D. Nev. Aug. 29, 2017) (denying, without a detailed discussion of Rule 26(b)(1) proportionality, a motion to reconsider magistrate judge's refusal to allow discovery of facts concerning a party's earlier settlement with two former plaintiffs, where party's purpose for seeking the settlement information was to show defendants' general bias against plaintiff and to show that they did not believe their own defenses to plaintiff's claim because they had settled with the others – "[t]his is exactly what Rule 408 prohibits: evidence of a settlement as proof of the value of a claim"); and *Columbia Gas Transmission, LLC v. 252.071 Acres*, No. ELH-15-3462, 2016 WL 7167979, at *5 (D. Md. Dec. 8, 2016) (denying discovery, as "unduly burdensome," of prior negotiations and settlement offers in land condemnation case where court had determined that pre-condemnation offers were irrelevant to the issue of "just compensation").

The single Seventh Circuit decision cited by Plaintiffs is of some additional help here. In *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106 (7th Cir. 1979), objectors challenging the fairness and adequacy of a class settlement sought discovery into the settlement negotiations to allow the objectors to examine more closely the settlement's fairness. The Seventh Circuit concluded that the record included facts that "cast some doubt" on the adequacy of the class's representation by class counsel during the negotiations and thus on the fairness of the resulting settlement, making the negotiations discoverable in the litigation over approval of the settlement. *Id.* at 1124-25. The court did not discuss Rule 408 policies in the context of proportionality, as the decision was rendered 36 years before the 2015 amendments to Rule 26(b)(1). The *General Motors* court did not recognize any settlement privilege shielding settlement-related documents from discovery, because Rule 408 "only governs admissibility" and does not require exclusion of such evidence when offered for purposes other than proving liability or damages. *Id.* at 1124 n.20. But in *General Motors*, the court still considered Rule 408's policy

9

of "encouraging the settlement of disputed claims without litigation" and concluded that this policy was "not undermined by our decision here." *Id.* The court reasoned that parties negotiating a class settlement know that they will need to seek trial court approval of the settlement under Rule 23 and "should be aware that the court will inquire into the conduct of the negotiations." *Id.*

*General Motors* and the other foregoing decisions suggest that in considering discovery of Rule 408-protected materials, courts still should consider the impact of discovery on Rule 408's policies. The amended Rule 26(b)(1) teaches us to undertake that consideration within an analysis of the requested discovery's proportionality to the needs of the case.

### B. Rule 408 and Its Underlying Policies

Again, as the Seventh Circuit confirmed in *General Motors*, Rule 408 does not establish a "privilege" against discovery of settlement offers and conduct and statements made during compromise negotiations. *Id.* Rule 408 provides by its terms that a party may not admit into evidence, for the purpose of proving or disproving "the validity or amount of a disputed claim," or of impeaching by a prior inconsistent statement or contradiction, the following:

> (1) furnishing, promising, or offering – or accepting, promising to accept, or offering to accept – a valuable consideration in compromising or attempting to compromise the claim, and
>
> (2) conduct or a statement made during compromise negotiations about the claim – except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

Fed. R. Evid. 408.[4]

---

[4] The Court declines Plaintiffs' invitation to narrow Rule 408 to omit the protection (from admissibility) of "conduct or a statement made during compromise negotiations about the claim." *See* Motion to Compel at 8-9 (arguing that Rule 408 covers only "express specific offers of compromise," and thus that the four documents withheld by Miquelon here do not even fall within the rule's protection).

Rule 408's bar on admissibility of settlement offers and settlement conduct or statements is intended primarily to promote a policy of encouraging out-of-court settlement. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 689 (7th Cir. 2005) (citing *Perzinski v. Chevron Chem. Co.*, 503 F.2d 654, 658 (7th Cir. 1974)).

> So important is this policy, and so highly regarded the exclusionary rule, that in practice settlement evidence is more often than not excluded altogether. There are, to be sure, purposes for which the proof is competent, but these are relatively narrow. It is well recognized, and rightly so, that the risks of prejudice and confusion entailed in receiving settlement evidence are such that often Rule 403 and the underlying policy of Rule 408 require exclusion even when a permissible purpose can be discerned . . . . With respect to settlement talks among litigants themselves, here too the exclusionary rule serves a good purpose. In some degree no doubt, lay people in the fourth century of the Republic sense that they will not be penalized in trying to settle their difficulties, even while they sense the risks in "saying too much." If they do not rely upon the exclusionary principle underlying Rule 408, it remains the case that reasonable behavior by litigants seeking to resolve difficulties should not be later penalized by evidence offered in trial over proper objection.

Christopher B. Mueller & Laird C. Kirkpatrick, 2 Federal Evidence § 4:56 (4th ed. 2019).

Other, similarly worded justifications have been offered, including the raw irrelevancy of settlement negotiations to whether any party actually admitted liability, and the understanding by parties at the outset of negotiations that their statements will not be used against each other if settlement fails. *See* Charles A. Wright, Arthur R. Miller & Kenneth W. Graham Jr., 23 Fed. Prac. & Proc. Evid. § 5302 (2d. ed. 2019); *Morley-Murphy Co. v. Zenith Elecs. Corp.*, 910 F. Supp. 450, 456 (W.D. Wis. 1996) (citing *Quad/Graphics, Inc. v. Fass*, 724 F.2d 1230, 1235 (7th Cir. 1983)), *rev'd on other grounds*, 142 F.3d 373 (7th Cir. 1998). The spirit and purpose behind the rule is to prohibit parties from introducing settlement evidence if the potential "chilling effect on future settlement negotiations" outweighs the need for the evidence in the first place. *Roberts v. Alexandria Transportation, Inc.*, No. 314CV01063JPGSCW, 2018 WL 2193816, at *5 (S.D. Ill.

May 14, 2018) (quoting *Zurich Am. Ins. Co.*, 417 F.3d at 689). *Accord Clark*, 2006 WL 626820 at *2-3; *Vardon*, 156 F.R.D. at 652.

Consideration of the social policies Rule 408 seeks to promote fits well within Rule 26(b)(1)'s conception of proportionality. The Advisory Committee notes to the 2015 amendment of Rule 26(b)(1) repeated the caution, in the Committee's discussion of proportionality, "that the monetary stakes are only one factor, to be balanced against other factors," including "the significance of the substantive issues, as measured in philosophic, social, or institutional terms." Fed. R. Civ. P. 26(b)(1), 2015 Advisory Committee Note (internal quotations omitted). This Court previously has held that a proper Rule 26(b)(1) proportionality analysis must consider the burden disclosure would impose upon important social policies or compliance systems, such as the voluntary submission of income tax returns against the backdrop of possible discovery of those returns in civil litigation involving claims of lost income. *See Johnson v. Soo Line Railroad Co.*, No. 17 C 7828, 2019 WL 4037963, at *2-3 (N.D. Ill. Aug. 27, 2019) (citing *Commodity Futures Trading Comm'n v. Collins*, 997 F.2d 1230, 1233 (7th Cir. 1993)). In *Johnson*, this Court applied Seventh Circuit precedent providing that income tax returns are not *per se* beyond the reach of discovery, but rather are subject to the district court's considered discretion in balancing their relevance against the burdens associated with compelled disclosure, holding that the necessary discretionary balancing fit well within the structure of the subsequently enacted proportionality requirement within Rule 26(b)(1) as amended in 2015. *Id.* This Court in *Johnson* then undertook an *in camera* review of tax returns to determine whether their disclosure in discovery was proportional to the needs of the case, measured against the backdrop of the other discovery provided to the defendant employer. *Id.* at *3.

## C. Proportionality of Compelled Discovery of the Miquelon Rule 408 SEC Materials Amid the Needs of the Case

Given the importance of the policies underlying Rule 408, the Court proceeds to consider how compelled discovery of the Miquelon Rule 408 SEC Materials burdens those policies, measured against the needs of the case. Disclosure of Rule 408-protected materials creates a burden beyond the monetary cost of providing the discovery, and this burden is not addressed by the entry of a protective order that limits disclosure to third parties or even beyond the parties' attorneys. The burden lies in the chilling effect on free and frank settlement negotiations. If, for example, a party knew that its presentations and statements to regulators or to government investigators – beyond mere underlying discovery documents provided to such authorities – will be freely discoverable in the follow-on civil litigation, that form and content of such a party's communications with the regulators and investigators will be significantly affected. Parties may refrain from making written presentations, either in the form of PowerPoint slides or so-called "white papers." They may limit their presentations to oral explications. The impact of their arguments, and the ability of line regulators to review or share those arguments with superiors, may be limited significantly, in a manner that undermines the policies undergirding FRE 408.

The Court's *in camera* review of the Miquelon Rule 408 SEC Materials allowed the Court to assess both the burden of compelled disclosure on Rule 408's policies and Plaintiffs' need for those materials within the context of "the needs of the case." Fed. R. Civ. P. 26(b)(1).

### 1. Plaintiffs' Purpose in Obtaining the Miquelon Rule 408 SEC Materials

Without revealing any specific content, it is fair to say that the four documents Miquelon submitted to the SEC in 2018 are fact-intensive and relate to the FY 2016 EBIT Goal and Walgreens's business performance in the aftermath of the announcement of that goal. As for the issues upon which Plaintiffs view the documents as relevant, Plaintiffs list them as:

13

- The evidence of "falsity, materiality, scienter, and loss causation underlying Plaintiff's Section 10(b) claims";

- Their relevance as party admissions;

- Their utility in eliciting other evidence of "factual timelines of evidence, [and] the persons involved in relevant events or with knowledge of the relevant facts";

- The degree to which Miquelon's statements to the SEC may differ from those made by Walgreens in its 2017 presentation that was produced to Plaintiffs (and which, contrary to Plaintiffs' suggestion, falls outside the scope of settlement negotiations because the submission was made before settlement negotiations began); and

- "potential witness bias and prejudice," as to which Plaintiffs provided no specific arguments.

Motion to Compel at 6.

Plaintiffs' statements that the Miquelon Rule 408 SEC Materials are relevant to the falsity and materiality of Defendants' alleged misrepresentations, and to whether Defendants acted with scienter, make Plaintiffs' purpose very clear: Plaintiffs want to use the documents to prove the validity of their claims under Section 10(b) that defendants made false, material representations with scienter and caused the Plaintiffs' alleged loss. Although at oral argument the Plaintiffs said they would not present the SEC documents as having established liability in and of themselves, Plaintiffs said they expected the materials to give them information such as factual timelines and the identity of persons with further discoverable information.

Based on the Court's *in camera* review of the Miquelon Rule 408 SEC Materials, the Court agrees that the materials are relevant to the claims and defenses in the case, and that the materials may provide Plaintiffs with a roadmap to how Walgreens, or at least Miquelon, may wish to frame the factual issues. The Miquelon Rule 408 SEC Materials are loaded with assertions that bear upon the factual and legal issues in the instant case. It is impossible to conclude that that the Miquelon Rule 408 SEC Materials would not be of use in the Plaintiffs' proof of the validity of

their claims, even if that use is derivative. The *in camera* review also confirmed that the Miquelon Rule 408 Materials have no apparent relevance under a theory of "witness bias or prejudice," so the Court rejects the idea that the impact of compelled discovery upon the policies underlying Rule 408 is learned by the evidence's supposed admissibility under such a theory.

Plaintiffs at oral argument also said they want the materials so they may discover what Miquelon said to the SEC, but that theory of relevance runs headlong into the fact that Miquelon submitted the materials to the SEC in the context of settlement and compromise. The relevance of the materials for which Miquelon said to the SEC goes directly to what Rule 408 seeks to prevent: the use of a party's Rule 408-protected statements against that party during his adversary's proof of the validity of the adversary's claim.

### 2. The Miquelon Rule 408 SEC Materials and the Needs of the Case

Moreover, the Court's *in camera* review of the four documents Miquelon submitted to the SEC also confirms that their compelled production is not so important to the needs of the case as to override the burden associated with such a production under a Rule 26(b)(1) proportionality analysis. As explained above, the primary utility of these documents, to any plaintiff in a Section 10(b) action, is the roadmap the documents provide to the manner in which Defendants may frame the factual and legal arguments. But in assessing proportionality, the Court does not see this kind of roadmap as essential to the needs of the case. The Court's *in camera* review of the Miquelon Rule 408 SEC Materials, and its review of the parties' submissions on Plaintiffs' renewed motion for additional document custodians (D.E. 258), including the 60 emails and deposition excerpts that Plaintiffs attached to that motion, tend to confirm that the Miquelon 408 SEC Materials were sourced from the factual discovery already being made available to Plaintiffs, as Miquelon represented. The 23 custodians whose ESI is being searched and produced to Plaintiffs include

line- and executive-level personnel with substantial knowledge of and involvement in the issues surrounding the FY2016 EBIT Goal, the business matters that bore upon it, Walgreens's knowledge of those evolving business matters, and the representations or public statements that Walgreens made or did not make about those matters.

Nothing about the needs of this case suggests any compelling reason why Plaintiffs must have the Miquelon Rule 408 SEC Materials to prosecute their claims, even if the materials are relevant to those claims and might well be very useful to Plaintiffs in proving them. Compelled production of the Miquelon Rule 408 SEC Materials is disproportionate to the needs of the case under Rule 26(b)(1).

## CONCLUSION

For the foregoing reasons, the Motion to Compel (D.E. 260) seeking discovery of the Miquelon Rule 408 SEC Materials is denied.

**SO ORDERED.**

ENTER:

**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: November 15, 2019**