UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WASHTENAW COUNTY EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>WALGREEN CO., GREGORY D. WASSON, and WADE D. MIQUELON,<br><br>Defendants. | Case No. 15 C 3187<br><br>District Judge: Sharon Johnson Coleman<br><br>Magistrate Judge: Gabriel A. Fuentes |

## MEMORANDUM OPINION AND ORDER

Lead Plaintiff Industriens Pensionsforsikring, A/S ("Plaintiffs")[1] moves for an *in camera* inspection ("Mot.," D.E. 328, 330) of 75 documents from those listed on two of the three volumes of privilege logs tendered by Defendant Walgreen Co. ("Walgreens") in support of attorney-client privilege claims it asserts in support of its withholding of the documents. In all, the first two volumes of the Walgreens privilege log list some 1,200 documents, and the third, which is the subject of ongoing efforts by the parties to resolve their disputes under Local Rule 37.2, contains an additional 4,500-some documents. (Mot. at 1 n.3.) Plaintiffs argue that the Court's ruling (after *in camera* inspection) on these 75 documents (as contained in Walgreens's opposition ("Opp.," D.E. 333) to the motion for *in camera* review, Exhibit 1)[2] will give the parties guidance on how to approach disputes over other privilege claims arising from documents Walgreens has described in

---

[1] This Court will refer to movant Industriens Pensionforsikring A/S, which was appointed by the district court to serve as lead class plaintiff, as "Plaintiffs." (*See* D.E. 244 n.1.)

[2] The Court is using Exhibit 1 to Walgreens's opposition (D.E. 333-2), and not Exhibit A to Plaintiffs' motion; although both have 75 entries and appear to contain the same items, Exhibit A to Plaintiffs' motion is printed in such small type that it is practically illegible. References in this Opinion to "Item Nos." refer to numbered log entries from Exhibit 1 to Walgreens's opposition. (D.E. 333-2.)

all three privilege logs. (Plaintiffs' Reply ("Reply," D.E. 338) at 8.) Walgreens, on the other hand, asserts that it diligently assembled the logs over thousands of attorney hours and adequately described the documents for purposes of evaluating the privilege claims within the logs, making an *in camera* review of the 75 documents unnecessary. (Opp. at 7-10.)

## DISCUSSION

Plaintiffs brought this securities fraud class action lawsuit against Walgreens, its former chief executive officer Gregory D. Wasson and its former chief financial officer Wade Miquelon under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. Plaintiffs' allegations relate to Walgreens's public statements concerning the expected benefits of a 2012 merger with Alliance Boots GmbH, in the form of a goal, for fiscal year 2016, of between $9 billion and $9.5 billion ("the FY 2016 EBIT Goal") in adjusted earnings before interest and taxes ("EBIT"). Plaintiffs allege that Walgreens had become aware that earnings would fall short of that goal, in large part due to a significant level of generic drug price inflation and a phenomenon known as "reimbursement pressure," by the class period of March to August 2014 but continued to make statements or omissions that downplayed the risk of not achieving the FY 2016 EBIT Goal. With respect to Plaintiffs' motion for *in camera* review, Walgreens does not dispute that whether to conduct an *in camera* review to determine the validity of privilege claims is a matter for the Court's discretion. *See United States ex rel. McGee v. IBM Corp.*, No. 11 C 3482, 2017 WL 1232616, at *3 (N.D. Ill. Apr. 4, 2017) (declining to exercise discretion to conduct *in camera* review of documents inadequately described on privilege log, and ordering revisions to the privilege log instead). Rather, Walgreens argues that Plaintiffs have not established that the Court ought to exercise its discretion to conduct an *in camera* review because Plaintiffs have failed to present a well-founded basis for challenging the logs' privilege designations. *See Crabtree v. Experian Inf.*

2

*Sols., Inc.*, No. 16 C 10706, 2017 WL 4740662, at *3 (N.D. Ill. Oct. 20, 2017) (declining to exercise discretion to conduct *in camera* review where challenges to the designations were based on "speculation" and were not well-founded, and noting that "Plaintiff is not entitled to an *in camera* review simply because he requested one").

I. **Legal Background**

We are taught to construe the attorney-client privilege narrowly because it runs counter to the idea that discovery is a search for truth in which parties are given liberal access to each other's evidence. *See McGee*, 2017 WL 1232616, at *2. This Court does not disagree, but the attorney-client privilege is a deeply rooted doctrine that carves out privileged communications from the general proposition that a party is entitled to each other's evidence. As the U.S. Supreme Court has stated:

> The attorney–client privilege is the oldest of the privileged for confidential communications known to the common law. 8 J. Wigmore, Evidence § 2290 (McNaughton rev. 1961). Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client. As we stated last Term in *Trammel v. United States*, 445 U.S. 40, 51, 100 S. Ct. 906, 913, 63 L.Ed.2d 186 (1980): "The lawyer–client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." And in *Fisher v. United States*, 425 U.S. 391, 403, 96 S. Ct. 1569, 1577, 48 L.Ed.2d 39 (1976), we recognized the purpose of the privilege to be "to encourage clients to make full disclosure to their attorneys." This rationale for the privilege has long been recognized by the Court, see *Hunt v. Blackburn*, 128 U.S. 464, 470, 9 S. Ct. 125, 127, 32 L.Ed. 488 (1888) (privilege "is founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure"). Admittedly complications in the application of the privilege arise when the client is a corporation, which in theory is an artificial creature of the law, and not an individual; but this Court has assumed that the privilege applies when the client is a corporation. *United States v. Louisville & Nashville R. Co.*, 236 U.S. 318, 336, 35 S. Ct. 363, 369, 59 L. Ed. 598 (1915) . . .

*Upjohn Co. v. United States*, 449 U.S. 383, 389-90 (1981). To establish that the attorney-client privilege blocks disclosure of a communication, the proponent of its application must establish that (1) legal advice of any kind was sought, (2) the legal advice was sought from a professional legal advisor in his or her capacity as such, (3) the communications related to that purpose, and (4) the communication was made in confidence. *See United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997).

Per *Upjohn*, with respect to the internal communications within a corporation, the attorney-client privilege extends only to an employee who communicates with counsel at the direction of corporate superiors regarding matters within the scope of the employee's duties for the purpose of securing legal advice. *McGee*, 2017 WL 1232616, at *2. Communications in which counsel is not a sender or recipient may also be privileged if they "reveal, directly or indirectly, the substance of a confidential attorney-client communication." *Crabtree*, 2017 WL 4740662, at *2, citing *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 433 (N.D. Ill. 2006) and *Herion v. Byrne*, 257 F.R.D. 645, 666 (N.D. Ill. 2009). Communications to or from counsel within the employ of a party ("in-house counsel") pose challenges, because business advice and legal advice may become intertwined, and for the communication to fall within the privilege, the legal advice must predominate within that communication. *BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 326 F.R.D. 171, 181 (N.D. Ill. 2018). "[B]usiness and financial advice are not protected." *RBS Citizens, N.A., v. Husain*, 291 F.R.D. 209, 217 (N.D. Ill. 2013). That said, the Supreme Court made clear, in rejecting an argument in *Upjohn* that the privilege should only extend to communications among members of "control group" senior managers, that the privilege must apply broadly enough within a corporation to give the privilege meaning:

4

> The narrow scope given the attorney–client privilege by the court below [in adopting the control-group test] not only makes it difficult for corporate attorneys to formulate sound advice when their client is faced with a specific legal problem but also threatens to limit the valuable efforts of corporate counsel to ensure their client's compliance with the law. In light of the vast and complicated array of regulatory legislation confronting the modern corporation, corporations, unlike most individuals, "constantly go to lawyers to find out how to obey the law," Burnham, The Attorney–Client Privilege in the Corporate Arena, 24 Bus.Law. 901, 913 (1969), particularly since compliance with the law in this area is hardly an instinctive matter .... [I]f the purpose of the attorney–client privilege is to be served, the attorney and client must be able to predict with some degree of certainty whether particular discussions will be protected. An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all.

*Upjohn*, 449 U.S. at 392-93.

All of which gets us to privilege logs, which are needed to allow an opposing party, and the Court, to evaluate the validity of a privilege claim. *See* Fed. R. Civ. P. 26(b)(5)(A) and Advisory Committee Comments to 1993 Amendments. In a matter as complex as the instant case, parties spend thousands of attorney hours poring over thousands of documents, plucking out those that may support a privilege claim, deciding whether to assert the privilege claim, and then going about the task of describing the documents and the claim in a manner that will pass muster. Much has been written about how inadequate descriptions put the privilege claim in peril. *See* Jerold S. Solovy & Robert Byman, "It's As Easy As Falling Off a Privilege Log," *The National Law Journal* (Jan. 24, 2000). Courts have rejected privilege log descriptions that are too "vague and generic." *See RBS Citizens*, 291 F.R.D. at 218 (discussing inadequate descriptions that failed to identify the "creators" of documents and that described documents as "containing ... privileged analysis re loan facilities ... based in part on and reflecting advice of counsel"). The judicial discretion to review the described documents *in camera* has turned on multiple factors, including the burden involved in reviewing the sheer number of documents, *see Am. Nat. Bank & Trust Co. of Chicago v. Equitable Life Assurance Soc. of the United States*, 406 F.3d 867, 879-880 (7th Cir. 2005), but

the thrust of these cases is that *in camera* review is more critical before compelled disclosure, so courts might make sure that the disclosed materials truly are not privileged. *Id.*, citing *In re BankAmerica Corp. Sec. Litig.*, 270 F.3d 639, 644 (8th Cir. 2001). But ultimately the question of whether to engage in an *in camera* review lies within the Court's discretion, and the Court ought not to engage in an *in camera* review of even a manageable number of documents if the review is not warranted. *Crabtree*, 2017 WL 4740662, at *3. Where a court's discretion is involved, "two judges can reach two correct yet contrary conclusions based on identical fact patterns." *Surgery Ctr. at 900 N. Michigan Ave., LLC v. Am. Physicians Assurance Corp.*, 317 F.R.D. 620, 629 (N.D. Ill. 2017), citing *Mejia v. Cook County, Ill.*, 650 F.3d 631, 635 (7th Cir. 2011); *United States v. Banks*, 546 F.3d 507, 508 (7th Cir. 2008).

## II. Analysis

In *Crabtree*, the court noted that the attorney-client privilege protects an attorney's "'legal advice about a business decision.'" 2017 WL 4740662, at *2, quoting *Perius v. Abbott Labs.*, No. 07 C 1251, 2008 WL 3889942, at *7 (N.D. Ill. Aug. 20, 2008). The court proceeded to analyze the privilege log descriptions in terms of whether they identified the communications as having "contain[ed] discussions about the legal implications of certain business decisions...." *Id.* Distinguishing business communications from legal communications may in fact be difficult, but so is the task of describing the basis for the privilege with sufficient detail yet without disclosing what the legal advice actually was. Preserving the privilege requires recognizing that there are limits to the specificity that courts ought to require in a privilege log. Descriptions that use the word "privilege" as a label, while saying nothing about what the communication was about or what it related to, are unacceptable. A description stating that a communication is privileged because it is a "privileged communication" or because if "reflects" privileged communications,

6

without further context, is insufficient. But descriptions that at least describe the subject matter to which the legal advice was directed come closer to being sufficient, and in many cases will be sufficient. The ultimate proof of privileged content is disclosure of the content itself. A privilege log, though, need only provide a form of penultimate proof, by way of a short summary statement that conveys at least a basis for the Court to believe that the content of the communication is privileged. "I shall not today attempt further to define the kinds of material I understand to be embraced within that shorthand description; and perhaps I could never succeed in intelligibly doing so. But I know it when I see it ...." *Jacobellis v. State of Ohio*, 378 U.S. 184, 199 (1964) (Stewart, J., concurring).

The types of log entries included in the motion fall into several categories as delineated in the motion: (1) communications between non-attorney employees; (2) emails on which in-house counsel is copied and is not a sender or recipient; (3) emails disseminated "widely" within the company and through distribution lists; (4) communications "reflecting," "circulating" or "discussing" legal advice; (5) communications that Plaintiffs say are simply not privileged; and (6) withheld attachments.

### A.   Communications Between Non-Attorney Employees

Again, the lawyer's involvement in a communication weighs heavily in favor of its being deemed privileged, but privileged communications may be contained in discussions between or among non-attorney employees. As *Upjohn* recognized, employees below the executive-suite level may have a distinct need to discuss and apply legal advice. 449 U.S. at 392-93. Plaintiffs point to eight emails as examples which did not involve lawyers and which, according to Plaintiffs, show why *in camera* review is needed.

In one of them, Item No. 28, one non-lawyer employee sent an email to two other non-lawyer employees, "circulating legal advice from in-house counsel re generic inflation and reimbursement." (D.E. 333-2, Ex. 1 at 5.) It is not implausible to believe that employees might receive legal advice from in-house counsel and then disseminate it among themselves. They may well need to communicate and understand it in order to follow the advice and ensure the corporation's compliance with the law. *Upjohn*, 449 U.S. at 392-93. The idea that they may not communicate the legal advice to each other by email without exposing the advice to civil discovery is hardly in furtherance of the corporation's ability to have full and frank consultation with counsel. Moreover, here, Walgreens has disclosed that the advice in this email was about "generic inflation and reimbursement," which are terms of art well-known to the parties in this litigation, as they go to the heart of some of the key disputes in the litigation. Had Walgreens described this item only as "the circulation of legal advice," then yes, the Court might need to exercise its discretion, either to order a supplemental privilege log or to engage in an *in camera* review. But neither this nor the other seven emails cited in this portion of Plaintiffs' argument are so bare bones. The emails indicate that the non-employees were exchanging emails that "circulat[ed]" or "reflected" legal advice about various specific matters, including "generic price increases," communications to investors and the public about quarterly earnings, board of directors "strategy meeting materials," and "investor communications." (Mot. at 9, citing Item Nos. 9, 31, 6, 7, 16, 17, 21.) Questions surrounding the corporation's handling of "generic price increases" and of how it might communicate with investors and the public about matters such as earnings are among those anyone would expect employees to address with in-house lawyers, and in fact this lawsuit arises from allegations about how the corporation communicated with investors about its earnings. In-house lawyers receive questions from their "business clients" (in the person of non-lawyer employees)

every day, and the employees' internal dissemination of that information to other employees on a need-to-know basis does not render the communication a "business" or "financial" matter that is outside the privilege. The log descriptions at issue here adequately indicate that the communications concern "legal" matters, and *in camera* review is not suggested by anything other than Plaintiffs' speculation that the communications are of a business or non-legal nature. That is an insufficient basis for *in camera* review. See *Crabtree*, 2017 WL 4740662, at *3.

### B. Emails Copying In-House Counsel

The emails relied upon by Plaintiffs for the idea that the privilege log disclosures were inadequate in a way that warrants *in camera* review, where one or more lawyers is a "cc" or was merely copied on a communication, are similar to those involving all non-lawyers. It is true that a non-privileged communication containing business advice or information, or containing something other than legal advice, does not suddenly become cloaked with the privilege simply because the sender chose to copy an in-house lawyer on it. See *Urban 8 Fox Lake Corp. v. Nationwide Affordable Hous. Fund 4, LLC*, 334 F.R.D. 149, 160-61 (N.D. Ill. 2020). The primary or predominate purpose of the communication must relate to the rendering of legal services if the communication is to be worthy of privilege protection. *BankDirect*, 326 F.R.D. at 181. Plaintiffs list six examples which they say "appear to be routine business communications in which in-house counsel is simply a copied recipient." (Mot. at 10, citing Item Nos. 49, 50, 51, 42, 47, and 53.).

The Court disagrees. The log describes these emails as "discussing" or "reflecting" legal advice on specific matters similar to those disclosed in the log entries discussed above in Part II(A). (*Id.*) The addition of one or more attorneys to the distribution list does not make the descriptions of their privileged character any more or less adequate, and the subject matters seem highly relevant to the disputed issues in the case. Legal advice about earnings disclosures, "generic

inflation and reimbursement, "reimbursement rates," and "discussions with analysts" does not cross the line into "routine business communications" unless the Court were to find that the otherwise adequate descriptions are simply disingenuous. The Court has not been presented with a basis for such a finding and does not so find. *See Crabtree*, 2017 WL 4740662, at *2 ("the Court finds that Plaintiff's speculation as to the amount of legal advice in certain 'business communications' is unfounded").

### C. Communications Disseminated "Widely" and Through Distribution Lists

As to these emails (*see* Mot. at 12, citing Item Nos. 62, 59, 18, and 75), Walgreens responded to the motion by stating that the distribution lists in question consist of outside counsel, a third-party consultant known as the Brunswick Group, and Walgreens's internal audit department. (Opp. at 12 & n. 6, 7.) Plaintiffs argued that the "widespread" distribution of these emails (two of them went to 17 non-employees) "suggests that Walgreens did not undertake the necessary efforts to maintain the confidentiality of the communication." (Mot. at 11.) But the Court does not find that suggestion to be a strong one, particularly where Walgreens described the distribution lists in its opposition brief, and Plaintiffs offered nothing further on that point in their reply. The Court does not accept that the allegedly "wide" distribution of these emails warrants *in camera* review, where there is no indication that they were shared outside the company except with non-attorney consultants as to whom no showing has been made that disclosure represented a waiver or a breaking of the privilege. The Court does note that in these and many other log descriptions, the identity of the attorney who was the source of the legal advice is not disclosed. The Court believes that a better practice would be to identify that attorney, but the fact that these attorneys are not identified specifically does not defeat the privilege claim or trigger *in camera* review. Depending on the complexity of the issues and the size of the corporation, identifying

10

each advising attorney as to each email may be difficult and even cost-prohibitive, particularly when the emails in question number in the thousands. The lack of identification of these attorneys does not engender a disbelief in the veracity of the log entries sufficient to require *in camera* review. In any event, the Court is not persuaded that further identification of the lawyers who gave the advice is proportional to the needs of the case at this time. *See* Fed. R. Civ. P. 26(b)(1).

### D. Communications "Reflecting," "Circulating," or "Discussing" Legal Advice

The Court already explained in Parts II(A) and (B) above that legal advice may well need to be disseminated internally, discussed, and circulated to others within the company in email communications that "reflect" what the advice is. Not surprisingly, attorney reviewers who come across emails that "reflect" the legal advice or that contain the advice as internally disseminated will commonly put such documents on the privilege log, and if the description is sufficient to establish that the documents do contain legal advice, as opposed to business advice or non-privileged communications, *in camera* review is not necessary. Such is the case with the numerous emails that contain the challenged phraseology, including the five listed as examples by Plaintiffs. (Mot. at 13, citing Item Nos. 40, 4, 15, 20, and 35.) The Walgreens log describes the "legal advice" in question specifically as concerning communications to shareholders on matters including business performance and earnings, and communications to directors about "tax inversion." The descriptions are adequate. They do not back up Plaintiffs' speculation that the emails are mere business communications for which the predominate purpose is something other than legal advice. *In camera* review is not necessary.

### E. Purportedly "Non-Privileged" Matters

Plaintiffs assert that Walgreens withheld and logged various documents that are not privileged because they related to "draft" press releases, public disclosures, or shareholder

communications. (*Id.* at 14-15.) But that argument ignores the reality that corporations often consult their attorneys about what to include in such drafts, what to remove from them, and ultimately what ought to be the contents of the final document that is released publicly. Disclosures to investors are critically important for corporations in view of the securities laws that Plaintiffs here assert were violated by Walgreens, so it is no surprise that Walgreens would seek legal advice about them. The log entries claimed to be insufficient to establish privilege state specifically that the communications "reflect[]" requests for legal advice about the content of draft earnings disclosures and an earnings-related press release. (*Id.* at 15, citing Item Nos. 39, 57, and 56.) The entries do not support Plaintiffs' request for *in camera* review.

### F. Withheld Attachments

Attachments need to have their own privileged bases in order for them to be properly withheld under a claim of privilege. *Crabtree*, 2017 WL 4740662, at *3, citing *Muro v. Target Corp.*, No. 04 C 6267, 2006 WL 3422181, at *5 (N.D. Ill. Nov. 28, 2006). Here, Plaintiffs complain that Walgreens improperly withheld attachments "that do not appear to be legal in nature nor reflect legal advice." (Mot. at 13.) Plaintiffs do not cite examples from the Walgreens log, but it is clear from the partial log of the 75 items at issue in this motion that Walgreens logged emails under descriptions that referred to attachments, without further description of the attachments, and that stated that both the parent email and the attachment "circulated" the legal advice in question. (*E.g.*, D.E. 333-2, Item Nos. 1, 2, 4, 5.) It is unclear whether Walgreens separately logged the attachments or provided a separate description of the senders and recipients, the privileged content, the date, and so forth. No such separate descriptions are evident from within the log entries supplied to the Court. Using Item No. 1 as an example, we know that Rick Hans sent an email to Snehal Shah and Nicholas Zanger on June 5, 2014, and that the email was

"circulating request for legal advice from in-house counsel re public disclosures." (*Id.*) We know also that there is an attachment. Was the attachment the request for legal advice? Who made the request and to whom? This information is fundamental to evaluating the privilege claims as to the attachments. The Court recognizes that the attachments in this case may be numerous, but on the other hand, Walgreens claims that "[w]hen attachments were privileged, Walgreens withheld them," and "[w]hen they were not, Walgreens produced them, along with their parent emails …." (Opp. at 13.) If that is the case, Walgreens might be able to direct Plaintiffs to the specific log entries (if they exist) containing the necessary information as to each withheld attachment already logged (if they were logged), or, alternatively, Walgreens could supplement its log to add entries ensuring that this information is provided as to each attachment withheld as privileged. The Court in its discretion will not review withheld any attachments *in camera*, and the broader question of supplementation of Walgreens's logs on this issue is not currently before the Court. The Court directs the parties to meet and confer about an approach that supplies Plaintiffs with the necessary information about withheld attachments, consistent with this Opinion.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion is denied.

**SO ORDERED.**

ENTER:

**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: July 14, 2020**